UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD REDINGER,

        Petitioner,                          Case Number 09-11210
                                                            Honorable David M. Lawson

v.

SHIRLEE HARRY,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Todd Redinger is in the custody of the Michigan Department of Corrections following his convictions for first- and third-degree child abuse. Mich. Comp. Laws 750.136b(2), (5). He alleges in a petition for a writ of habeas corpus under 28 U.S.C. § 2254 that his convictions and prison sentences totaling ten to fifteen years are unconstitutional because:(1) he was deprived of his right to present a defense when the trial court refused to authorize sufficient funds to allow him to obtain an expert witness on the cause of the child's injuries; (2) the prosecutor's closing argument improperly shifted the burden of proof; (3) there was insufficient evidence to support his convictions; and (4) the Michigan sentencing court abused its discretion when it departed upward from the statutory sentencing guidelines. The respondent filed an answer to the petition arguing that the petitioner's claims are either non-cognizable or meritless. The Court finds that none of the petitioner's claims have merit. The Court therefore will deny the petition.

I.

The petitioner was charged with child abuse when his three-month-old son, "E.R.," was discovered with a skull fracture, subdural hematoma, retinal hemorrhaging, and bruising. The petitioner admitted to police that he punched the infant in the side of his head. He also was charged with abusing his two-year-old, who was found with a large bruise across his buttock. The state court of appeals summarized the facts of the case as follows:

> In 2004, defendant was living with his then fiancee, Janet Austill, and Austill's two children, J.R. and Jb.R. Defendant and Austill's son, E.R., was born on December 14, 2004. E.R. was hospitalized for kidney treatment and surgery to repair a hernia on January 10, 2005. On February 16, 2005, defendant woke Austill to tell her that E.R. was not breathing. Austill called 911. E.R. was transferred to the hospital where he was diagnosed with retinal bleeding and subdural hematoma, but he did not present any external signs of trauma such as bruising. A few days later, x-rays revealed that he had a complex skull fracture. Meanwhile, defendant's neighbor, Stacy Cresswell, babysat J.R. and Jb.R. while defendant and Austill went to the hospital with E.R. When she changed Jb.R.'s diaper, she observed a large bruise on his right buttock. Creswell reported the bruise to the police.
>
> Defendant admitted to the police that he spanked J.R. and Jb.R. with a hunting arrow, which might have left marks on their buttocks. Defendant gave varying explanations for what happened before E.R. stopped breathing. He stated that E.R. accidentally hit his head on a kitchen cabinet and fell to the floor while defendant was swinging him into the air to stop his crying. Defendant also admitted that he punched E.R. in the head with his fist. Additionally, defendant explained that he accidentally closed E.R.'s head in a recliner footrest when he stood up while E.R. was on the floor. Defendant initially said the footrest incident happened on the same day that E.R. stopped breathing, but later said that it happened several days before.
>
> The prosecution's expert witness, Mary Smyth, M.D., opined that E.R.'s injuries were not accidental, because a two-month-old child is unable to ambulate or put himself into a position where he could sustain this type of injury. She also testified that E.R.'s skull fracture was not consistent with simply falling and striking his head on a hard surface, because the fracture pattern was complex, not linear. When asked whether the fracture was consistent with a punch to the head, she replied that forceful, repetitive punching might have caused it. Dr. Smyth testified that the combination of retinal hemorrhage, subdural hematoma, and skull fracture was indicative of a major traumatic event, which is usually attributable to abuse unless there is a history of a major traumatic event that could have caused the injuries. She stated that it is not unusual for a child to sustain a retinal hemorrhage in only one eye after experiencing abuse that also causes a skull fracture and subdural hematoma.

> Hospital personnel did not observe any indication of a head injury during E.R.'s previous hospitalization, and Dr. Smyth stated that medical testing ruled out the possibility that any of these preexisting problems contributed to E.R.'s head injury. Dr. Smyth also testified that while testing for genetic abnormalities was not complete, there was no genetic disorder that could result in a spontaneous skull fracture, subdural hematoma, and retinal hemorrhage. She also ruled out the possibility that E.R.'s injury was related to a fall during his mother's pregnancy. Rather, E.R.'s symptoms were indicative of an acute event that happened shortly before EMS was called. Dr. Smyth acknowledged that E.R. did not immediately display external signs of injury such as bruising, but averred that a child might suffer internal brain and eye injuries without presenting external signs. She also stated that it is difficult to observe bruises on a child's scalp.

*People v. Redinger*, No. 269139, 2007 WL 2377341, at *1-2 (Mich. Ct. App. Aug. 21, 2007).

The petitioner's convictions were affirmed on direct appeal, *ibid.*, and his application for leave to appeal was denied by the Michigan Supreme Court, *People v. Redinger*, 480 Mich. 1011, 743 N.W.2d 35 (2008).

The petition for habeas corpus raises the following issues:

I.  The lower court['s] refusal to authorize payment for a defense expert witness violated [the petitioner's] constitutional right to present a defense.

II. The prosecutor's closing argument violated [the petitioner's] right to a fair trial.

III. The evidence presented in the jury trial failed to [prove] guilt beyond a reasonable doubt.

IV. The court failed to establish [a] substantial and compelling reason for the departure above the sentence guidelines.

Pet. at 6-10. The attorney general filed a non-conforming response for the respondent, which violated Federal Rule of Civil Procedure 5.2(a)(3) (forbidding a party from filing a paper referring to a minor other than by "the minor's initials"). Therefore, the response will be stricken, and the Court will assess the merits of the case based on the petition alone.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its unanimous decision two terms ago in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.

The AEDPA thus imposes a highly deferential standard for evaluating state court rulings, and demands that state court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 673 F.3d at 473-74; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner's first claim asserts that the trial court violated his right to present a defense when it denied his request for funds to hire an expert witness. Before trial, defense counsel requested funds to hire an expert witness, Dr. Ronald Uscinski, to offer testimony on the source of E.R.'s injuries. Dr. Uscinski's fees were $3,000 to testify by telephone, and $10,000 for live

testimony. Dr. Uscinski had already testified at a related neglect and abuse proceeding brought against the petitioner in probate court. During that proceeding, he testified that the subdural hematoma contained old blood, and therefore it occurred weeks or months prior to the alleged incident of abuse. He also testified that a skull fracture and hematoma could have occurred during birth, but there was not enough information available to determine how E.R.'s skull fracture occurred.

The trial court ruled that it would sign an order appointing a medical expert to review the cause of the injuries at the "normal" rate, but it would not pay the "exorbitant" fee requested by Dr. Uscinski. Trial counsel was unable to find another expert witness to testify at the lower rate, and he did not present an expert witness at trial.

The Michigan Court of Appeals found that the trial court properly denied the petitioner's request for expert assistance:

> Defendant first argues that the trial court denied him the opportunity to present a defense by refusing to authorize payment of an expert witness fee in excess of the court's standard rate. We disagree.
>
> Michigan Compiled Laws 775.15 authorizes payment of fees for an expert witness for an indigent defendant where the defendant demonstrates that the expert's testimony is necessary to enable him to safely proceed to trial. *People v. Jacobsen*, 448 Mich. 639, 641; 532 N.W.2d 838 (1995). Although the witness "shall be paid . . . in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people," the trial court may approve additional fees. The trial court's decision whether to do so is reviewed for an abuse of discretion. *In re Attorney Fees of Klevorn*, 185 Mich. App. 672, 678; 463 N.W.2d 175 (1990).
>
> Before trial, defendant moved for appointment of an expert medical witness with regard to the cause of E.R.'s injuries. The trial court agreed to appoint an expert at the court's standard rate for experts. Defendant requested that the court approve additional fees to enable Dr. Ronald Uscinski, an expert in pediatric neurology, to testify at trial. Dr. Uscinski had testified for defendant in an earlier child protective proceeding. Although Dr. Uscinski's standard fee for giving testimony was $10,000, he agreed to accept $3,000 to testify by telephone in the child protective proceeding.

> In defendant's criminal case, defendant requested that the court similarly allow Dr. Uscinski to testify by telephone and approve his $3,000 fee. The prosecutor advised the trial court that her expert, Dr. Smyth, would receive the standard expert witness fee of $200. The prosecutor also objected to the proposed procedure of testifying by telephone. The trial court did not address the propriety of testimony by telephone, but the trial court denied Dr. Uscinski's requested fees, finding them excessive and unreasonable, but stated that it was willing to appoint another expert at the court's standard rate. Defendant did not request appointment of another expert and did not present expert testimony at trial.
>
> Although defendant preferred Dr. Uscinski, referring to him as "one of the nation's leading experts," due process protections do not guarantee indigent defendants all the assistance that wealthier defendants might buy. *People v. Leonard*, 224 Mich. App. 569, 580-581; 569 N.W.2d 663 (1997). Further, an indigent defendant's right to appointment of an expert does not entitle him to appointment of a particular expert who will reach conclusions that satisfy the defendant but only an expert who is competent in his field. *People v. Stone*, 195 Mich. App. 600, 606; 491 N.W.2d 628 (1992). Defendant has not at any point shown that there were no other competent medical experts who could testify regarding the cause of E.R.'s injuries. Defendant relies on *People v. McPeters*, 181 Mich. App. 145; 448 N.W.2d 770 (1989), where the trial court refused to approve an expert's fees above the standard rate, and it became apparent during the expert's testimony that he was refusing to cooperate without payment of his requested fee. The trial court erred by refusing either to approve a greater fee or to appoint a different expert. *Id.* at 149-152. In contrast, the trial court here did offer to appoint another expert.
>
> Under the circumstances, the trial court did not abuse its discretion in refusing to approve Dr. Uscinski's requested expert witness fees. Further, because the trial court offered to appoint another expert witness for defendant, it did not deny him the opportunity to present a defense.

*Peoiple v. Redinger*, 2007 WL 2377341, at *2-3 (footnote omitted).

The controlling constitutional authority appears to be *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985), where the Supreme Court recognized a criminal defendant's limited right to the assistance of an expert witness in a case in which the defendant raised an insanity defense:

> We . . . hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

-8-

*Id.* at 83. The Supreme Court did not discuss a defendant's entitlement to a court-appointed expert outside the context of an insanity defense. Since its decision in *Ake*, the Supreme Court has not taken the opportunity to "determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of other types of experts." *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985).

There is disagreement among the circuits over whether *Ake* requires the provision of expert services beyond psychiatric services necessary to present an insanity defense, and the Sixth Circuit has not taken a definitive position on the question. *Babick v. Berghuis,* 620 F.3d 571, 579 (6th Cir. 2010) (noting disagreement among courts of appeals); *Tinsley v. Million*, 399 F.3d 796, 807 (6th Cir. 2005) (questioning a defendant's entitlement to a blood-spatter expert); *Terry v. Rees*, 985 F.2d 283, 284 (6th Cir. 1993) (stating that the petitioner was denied the opportunity to present an effective defense by failure to appoint an independent pathologist).

Regardless of the circuit split, and even the conflict in the circuit, it is plain that there is no controlling Supreme Court precedent on this issue. Without that, the petitioner cannot show a constitutional violation that would entitled him to habeas relief. 28 U.S.C. § 2254(d)(1) (allowing a writ of habeas corpus to issue to a state prisoner if the state court's decision "was contrary to, or involved an unreasonable application of, *clearly established Federal law, as determined by the Supreme Court*" (emphasis added)). *See Williams*, 529 U.S. at 380 (opinion of Stevens, J.) (indicating that "AEDPA codifies *Teague* [*v. Lane*, 489 U.S. 288 (1989)] to the extent that *Teague* requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final").;

-9-

If there is such a rule that extends beyond insanity experts, the trial court did not violate it here. The court was willing to appoint a medical expert that would have put the petitioner on equal footing with the prosecution. That is all that the Sixth Amendment requires. Just as the constitutional right to counsel does not translate into a defendant's right to counsel of his choice, *United States v. Coles*, 695 F.3d 559, 562 (6th Cir. 2012), neither can it be said that the right to technical assistance implies a power of selection.

The petitioner has not shown that the state courts' decisions misapplied clearly established Supreme Court precedent. He is not entitled to a writ of habeas corpus on this claim.

B.

The petitioner next asserts that the prosecutor committed misconduct during closing arguments when he stated that the petitioner failed to offer an innocent medical explanation for the complainant's injuries, thereby shifting the burden of proof. The Michigan Court of Appeals rejected this claim on the ground that the remarks amounted to a fair comment on the evidence, especially Dr. Smyth's testimony.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious that it rendered the entire trial fundamentally unfair based on the totality of the circumstances. *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000).

The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (citing *Hayton v. Egeler*, 555 F.2d 599, 604 (6th Cir. 1977)). The Court focuses on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). "The Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle*, 457 F.3d at 516 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).

The Michigan Court of Appeals rejected the petitioner's claim of prosecutorial misconduct as follows:

> Defendant argues that it was improper for the prosecutor to argue that no medical condition could explain E.R.'s constellation of injuries, because the prosecutor knew that Dr. Uscinski could have rebutted Dr. Smyth's testimony, and because the argument also invited the jury to convict defendant for failing to present evidence, thus shifting the burden of proof. However, the prosecutor's remarks were supported by the evidence that no preexisting conditions contributed to the injuries, no genetic disorder could account for the injuries, a fall during E.R.'s mother's pregnancy would not cause the injuries, and the injuries were indicative of an acute event that occurred shortly before E.R. was hospitalized. The prosecutor did not comment on defendant's failure to present evidence or imply that defendant was required to prove or explain anything. Viewed in context, the prosecutor permissibly argued that inculpatory evidence was undisputed. Defendant's inability to present Dr. Uscinski did not preclude him from presenting expert testimony with which to rebut Dr. Smyth's testimony. The fact that defendant did not do so does not mean that the prosecutor's statement that there was no medical explanation for E.R.'s injuries was unsupported by the evidence.

*People v. Redinger*, 2007 WL 2377341, at *3 (citations omitted).

The court's holding was not an unreasonable application of Supreme Court precedent. Although the prosecutor may not argue or imply that the burden of persuasion falls to a defendant

to prove his innocence, *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993), she is entitled to point out the lack of evidence supporting defense theories, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). Pointing out the defense's failure to produce evidence to contradict or call into question the prosecution evidence does not amount to an attempt by the prosecutor to shift the burden of proof. *United States v. Kuehne*, 547 F.3d 667, 690 (6th Cir. 2008) (holding that "'a prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the government's case' so long as the prosecutor 'avoid[s] commenting in such a manner that treads on the defendant's constitutional rights and privileges'" (quoting *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993))). Here, the prosecutor accurately commented that there was no evidence that provided an innocent medical explanation for the injuries suffered by the petitioner's young son. This statement was an accurate description of the evidence presented at trial. Moreover, the trial judge instructed the jury that the petitioner was presumed innocent and that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt, which militated against any improper inference that might have been taken from the State's argument. *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002).

C.

The petitioner's third claim is that the evidence was not sufficient to sustain his two convictions for child abuse. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (citations and footnote omitted). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Ibid*. (citing *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000)). The Court need not be convinced that the petitioner is actually guilty beyond a reasonable doubt, provided there is sufficient evidence in the record to support the jury's verdict. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

Applying the *Jackson* standards, the Michigan Court of Appeals rejected the petitioner's insufficiency of evidence arguments as follows:

> First-degree child abuse entails "knowingly or intentionally caus[ing] serious physical or serious mental harm to a child." Mich. Comp. Laws 750.136b(2). Third-degree child abuse entails "knowingly or intentionally caus[ing] physical harm to a child." Mich. Comp. Laws 750.136b(5). "Physical harm" is "any injury to a child's physical condition," and "serious physical harm" is "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or

-13-

> hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." Mich. Comp. Laws 750.136b(1)(e)-(f). The child abuse statute should not be construed to prohibit a parent from reasonably disciplining a child, including the reasonable use of force.
>
> Defendant argues that there was insufficient evidence that E.R.'s injuries were caused by defendant's conduct. However, defendant admitted that he punched E.R. in the head with his fist, and Dr. Smyth testified that E.R.'s injuries indicated physical abuse and could be explained by repeated, forceful punching. Dr. Smyth also ruled out other possibilities, such as birth trauma, accident, or an undiagnosed genetic condition. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find that E.R. was seriously injured by defendant's knowing or intentional conduct. Likewise, considering the nature of the injury to a three-month-old child, defendant's admission that he struck E.R. in the head with a fist, and the evidence that E.R.'s head injury was consistent with having been punched repeatedly and forcefully, the evidence supported an inference that defendant acted with the knowledge or intent that serious injury would result.
>
> Defendant also argues that there was insufficient evidence to convict him of third-degree child abuse of J.R. because there was no evidence that the bruise left by the arrow was painful. However, "physical harm" includes "any injury to a child's physical condition" and does not include an element of pain. Mich. Comp. Laws 750.136b(1)(e) (emphasis added). In any event, the jury could reasonably infer that being struck with an arrow to a degree that it left a bruise would have been painful. The jury could also reasonably find that using an arrow to spank a two-year-old child did not constitute reasonable discipline or reasonable force. Thus, there was sufficient evidence to support defendant's conviction of third-degree child abuse.

*People v. Redinger*, 2007 WL 2377341, at *5 (citations omitted).

Not much more needs be said on the point. It is painfully apparent that the record contains abundant evidence that proves beyond a reasonable doubt the petitioner's guilt of both first- and third-degree child abuse. The court applied the correct legal standard in addressing the question of sufficiency of the evidence with reference to the elements of the crimes. Evidence was presented from which a reasonable jury could find all the elements of first and third-degree child abuse. Therefore, the petitioner is not entitled to habeas relief on this claim.

D.

The petitioner's last claim asserts that the trial court failed to articulate adequate reasons for imposing a sentence in excess of Michigan's sentencing guidelines. However, that claim does not present a federal question.

The petitioner's sentences of ten-to-fifteen and one-to-two years were within Michigan's statutory limits. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The petitioner's contention "that the trial court erred in applying the state sentencing guidelines raises an issue of state law only. It does not implicate any federal rights." *Garcia–Dorantes v. Warren*, 769 F. Supp. 2d 1092, 1112 (E.D. Mich. 2011). "'[F]ederal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Therefore, a claim that the trial court incorrectly applied the state sentencing guidelines simply is not cognizable on federal habeas corpus review. *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *see also Koras v. Robinson,* 123 F. App'x 207, 214 (6th Cir. 2005) (state trial judge's alleged failure to articulate the reasons for enhancing habeas petitioner's sentence, in violation of Michigan Court Rule 6.425 and Michigan case law, did not present a basis for federal habeas corpus relief).

### III.

The respondent's response violates Federal Rule of Civil Procedure 5.2(a)(3) and will be stricken. Nonetheless, the petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that the response to the petition [dkt. #6] is **STRICKEN**, and the Clerk is instructed to remove the image from the docket.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 22, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 22, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL